**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

KIMBERLY HICKS,⁣ )
⁣ )
⁣ )
Plaintiff,⁣ )
⁣ )
⁣ )
v.⁣ )⁣ Case No.:  09-CV-3514
⁣ )
⁣ )
OFFICER MICHAEL POPPISH and⁣ )⁣ Judge Robert M. Dow, Jr.,
CITY OF CHICAGO,⁣ )
⁣ )
⁣ )
Defendants.⁣ )

**MEMORANDUM OPINION AND ORDER**

Kimberly Hicks ("Plaintiff") has sued the City of Chicago and Chicago Police Sergeant

Michael Poppish for violations of state and federal law stemming from her arrest on January 13,

2009.  Count I is a claim for false arrest and Count II is a claim for malicious prosecution.  Count

III purports to seek statutory indemnification against the City in reliance on 745 ILCS 10/9-102.

The complaint states that it is brought pursuant to 42 U.S.C. § 1983, for violations of Plaintiff's

Fourth Amendment rights.  Defendants have moved for summary judgment on all counts [64].

For the reasons set forth below, the Court grants Defendants' motion, and enters judgment for

Defendants and against Plaintiff.

## I.    Factual Background[1]

At around 9 p.m. on January 13, 2009, Plaintiff and her male companion Geoffrey Guy drove in Plaintiff's Chevy Impala to the Red Lobster restaurant located at 5201 South Pulaski, in Chicago. Unbeknownst to Plaintiff, Guy carried a handgun with him to dinner that evening.[2] At the Red Lobster, Plaintiff and Guy met with a music producer, Gabriel, his wife, and two other disc jockeys (D.J.s). After finishing dinner, Guy went with Gabriel and the two D.J.s to listen to music in Gabriel's truck, which was parked outside the restaurant. The four men entered Gabriel's truck, and Gabriel then drove his truck from a parking space on the side of the restaurant to a space directly in front of the restaurant entrance. Gabriel sat in the driver's seat, Guy sat in the passenger's seat, and the two D.J.s sat in the back seat. In the meantime, Plaintiff and Gabriel's wife paid the bill and then walked to Plaintiff's car. Plaintiff drove her car to a parking space next to Gabriel's truck, so that her driver side door was not far from Gabriel's passenger side door.[3] Gabriel's wife sat in the passenger's seat of Plaintiff's vehicle.

---

[1] The Court has taken the relevant facts from the parties' local rule ("L.R.") 56.1 statements. L.R. 56.1 requires that statements of fact contain allegations of material fact, and that the factual allegations be supported by admissible record evidence. See L.R. 56.1; *Malec v. Sanford*, 191 F.R.D. 581, 583-85 (N.D. Ill. 2000). The Seventh Circuit teaches that a district court has broad discretion to require strict compliance with L.R. 56.1. See, *e.g.*, *Koszola v. Bd. of Educ. of the City of Chicago*, 385 F.3d 1104, 1109 (7th Cir. 2004); *Curran v. Kwon*, 153 F.3d 481, 486 (7th Cir. 1998) (citing *Midwest Imports, Ltd. v. Coval*, 71 F.3d 1311, 1317 (7th Cir. 1995) (collecting cases)). Where a party has offered a legal conclusion or a statement of fact without offering proper evidentiary support, the Court will not consider the statement. See, *e.g.*, *Malec*, 191 F.R.D. at 583. Additionally, where a party improperly denies a statement of fact by failing to provide adequate or proper record support for the denial, the Court deems admitted that statement of fact. See L.R. 56.1(a), (b)(3)(B); see also *Malec*, 191 F.R.D. at 584. The requirements for a response under Local Rule 56.1 are "not satisfied by evasive denials that do not fairly meet the substance of the material facts asserted." *Bordelon v. Chicago Sch. Reform Bd. of Trs.*, 233 F.3d 524, 528 (7th Cir. 2000). In addition, the Court disregards any additional statements of fact contained in a party's response brief but not in its L.R. 56.1(b)(3)(B) statement of additional facts. See, *e.g.*, *Malec*, 191 F.R.D. at 584 (citing *Midwest Imports*, 71 F.3d at 1317). Similarly, the Court disregards a denial that, although supported by admissible record evidence, does more than negate its opponent's fact statement—that is, it is improper for a party to smuggle new facts into its response to a party's 56.1 statements of fact. See, *e.g.*, *Ciomber v. Coop. Plus, Inc.*, 527 F.3d 635, 643 (7th Cir. 2008).

[2] As to this fact, Plaintiff contends (and Defendants do not deny) that Plaintiff did not see Guy with a

After Plaintiff and Gabriel's wife, and Gabriel, Guy, and the two D.J.s sat in their respective vehicles for around thirty minutes (they were talking and listening to music), Sergeant Poppish and Detective Amato arrived and approached Gabriel's truck. Sergeant Poppish walked to the passenger door of Gabriel's truck. Guy exited Gabriel's truck, although the parties dispute how he did so—Plaintiff asserts that Sergeant Poppish pulled Guy out of the vehicle, whereas Defendants deny that this was the manner in which Guy exited Gabriel's vehicle.

The parties agree, however, that once Guy was outside Gabriel's vehicle, Sergeant Poppish told Guy to "show me your hands." Defendants maintain that Guy refused to do so and walked back to Plaintiff's car door, although Plaintiff denies these facts. See Pl. Resp. Def. SOF ¶ 14. The parties' stories converge on the facts that the driver's side door of Plaintiff's vehicle was "cracked" open—which Guy noticed at the time—and that the driver's side window on Plaintiff's car was open to some extent (Defendants state that the window was "open" whereas Plaintiff admits only that the window was "partially down").[4] *Id.* at ¶ 16.

The parties agree that Guy then tossed his gun in the direction of Plaintiff's car. Plaintiff admits that she saw Guy throw an object *under* the driver's side of her car, which she admits was the gun. See Pl. Resp. Def. SOF ¶¶ 18, 19. Defendants assert that Sergeant Poppish saw Guy remove the handgun from his pocket and throw it "toward—into [Plaintiff's] vehicle into the floor of the driver's side of the vehicle." Ex. H to Def. Resp. Pl. SOAF at 35:6-12. Plaintiff

---

weapon when they left their apartment for the Red Lobster, as they drove to the Red Lobster, or while they were at the Red Lobster.

[3] The distance between the two cars is disputed. In accordance with her deposition testimony, Plaintiff asserts that her car was "a couple of parking spaces away" from Gabriel's truck, while Defendants maintain the two cars were "within 5 feet" of each other.

[4] At some point during these events, Plaintiff asserts that she asked Sergeant Poppish, "What's going on?" Defendants admit only that Plaintiff testified at her deposition that she asked Sergeant Poppish this question.

vehemently denies that Guy threw a weapon *into* her car. Upon seeing Guy throw his gun under

Plaintiff's car, Sergeant Poppish yelled "gun!" to his partner and attempted to place Guy under

arrest, leading to a struggle between Guy and Sergeant Poppish.[5]

The parties agree that Sergeant Poppish had focused his attention on Guy during the

altercation, and that at some point Plaintiff exited her car. Plaintiff walked toward the rear of her

vehicle, where Guy and Sergeant Poppish were struggling. Plaintiff was holding a cellular

telephone in her hand. See Ex. B to Def. SOF (Hicks Deposition at 69:7-9). Sergeant Poppish

asked Plaintiff what she had in her hand. *Id.* at 69:11-12. Given that, as Defendants allege,

Sergeant Poppish had yet to recover the gun that Guy had thrown, Sergeant Poppish told Plaintiff

to put her hands on the car and asked Plaintiff where the gun was. Plaintiff responded that she

did not know what he was talking about. At some point during the conversation between

Plaintiff and Sergeant Poppish, Plaintiff contends that Guy told Sergeant Poppish that Plaintiff

had nothing to do with the gun, although Defendants admit only that Plaintiff testified to this

comment in her deposition, not that Guy actually made it. The parties do agree, however, that

Guy told Plaintiff to "give [Sergeant Poppish] what I gave you." Sergeant Poppish believed that

Guy was referring to the gun. Questioning at Plaintiff's and Guy's depositions elicited the fact

that when Guy made this statement, he may have been referring to a book of CDs that he had

with him that night that contained music that he had created. Nevertheless, Sergeant Poppish

testified that he believed that Plaintiff knew the location of the gun and was being purposefully

evasive by telling him she did not know anything about a gun. Plaintiff vehemently denies this

belief, in part because she argues Sergeant Poppish had seen Guy's gun tossed under Plaintiff's

car).

---

[5] Plaintiff asserts that Sergeant Poppish had not identified himself as a police officer, and the struggle
took place before Guy knew that Sergeant Poppish was a police officer. (Defendants deny that Sergeant
Poppish had failed to identify himself as a police officer by that point).

The parties agree that Sergeant Poppish searched Plaintiff's car and found the gun, although the parties dispute as to where. Sergeant Poppish testified at his deposition that Guy directed Plaintiff to tell Poppish where to find the gun, and that Plaintiff told Poppish that it was under the passenger's seat of her vehicle. Sergeant Poppish testified that he did, indeed, find the gun under the passenger's seat of Plaintiff's car. Plaintiff asserts, however, that Sergeant Poppish did not find a gun in Plaintiff's car (but does not offer an explanation as to where he found the gun). The parties do agree that Plaintiff never saw Sergeant Poppish recover the gun from the inside of her car.[6]

Guy was arrested and later pled guilty to a charge of unlawful use of a weapon. Plaintiff was arrested and charged with possession of a firearm without valid Firearm Owner's Identification ("FOID") Card and aggravated unlawful use of a weapon. She made her initial appearance before a judge on January 14, 2009, and was imprisoned until all charges against her were dismissed on January 20, 2009.

## II.     Standard of Review

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Factual disputes that are irrelevant to the outcome of the suit "will not be counted." *Palmer v. Marion County*, 327 F.3d 588, 592 (7th Cir. 2003) (quotation marks and citations omitted). In determining whether there is a genuine issue of fact, the Court "must construe the facts and draw all reasonable inferences in the light most favorable to the nonmoving party." *Foley v. City of Lafayette*, 359 F.3d 925, 928 (7th Cir. 2004). To avoid summary judgment, the

---

[6] Plaintiff alleges that during the course of these events, she repeatedly told Sergeant Poppish that she did not see Guy with a gun. Defendants admit only that Plaintiff testified in her deposition that she told Sergeant Poppish she had not seen Guy with a gun prior to the events in question.

opposing party must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (internal quotation marks and citation omitted).

A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. at 248. The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. See *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Summary judgment is proper against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id*. at 322. The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In other words, the "mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson*, 477 U.S. at 252.

## III.    Analysis

Count I is a § 1983 claim against Sergeant Poppish for false arrest.[7] To prove such a claim, Plaintiff must show that a person acting under color of state law deprived her of a right, privilege, or immunity secured either by the Constitution or federal law. See, *e.g. Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 929 (1982). Sergeant Poppish does not dispute that he was acting under color of state law at the time that he arrested Plaintiff. Rather, he argues that he had

---

[7] Plaintiff does not specify in her complaint [1] whether she intends for her false arrest claim to be brought pursuant to § 1983 or state law; rather she pleads generally in the introductory paragraphs of her complaint that "[t]his action is brought pursuant to 42 U.S.C. § 1983." Cmplt. at ¶ 4. Because Plaintiff identifies no other basis for federal jurisdiction, the Court will assume that Plaintiff indeed intended for her false arrest claim to be brought pursuant to § 1983.

probable cause for Plaintiff's arrest, or in the alternative, that he is entitled to qualified immunity.

For the reasons explained below, the Court agrees with both of these arguments.

### A. Existence of Probable Cause

"Probable cause to arrest is an absolute defense to any claim under Section 1983 against police officers for wrongful arrest, false imprisonment, or malicious prosecution." *Mustafa v. City of Chicago*, 442 F.3d 544, 547 (7th Cir. 2006) (citing *Potts v. City of Lafayette*, 121 F.3d 1106, 1113 (7th Cir. 1997)). "This is so even where the defendant officers allegedly acted upon a malicious motive." *Id.* (citing *Simmons v. Pryor*, 26 F.3d 650, 654 (7th Cir. 1993)).

Police officers have probable cause to arrest an individual when "the facts and circumstances within their knowledge and of which they have reasonably trustworthy information are sufficient to warrant a prudent person in believing that the suspect had committed" an offense. *Kelley v. Myler*, 149 F.3d 641, 646 (7th Cir. 1998). The Court evaluates probable cause "not on the facts as an omniscient observer would perceive them," but rather "as they would have appeared to a reasonable person in the position of the arresting officer—seeing what he saw, hearing what he heard." *Id.*; see also *Woods v. City of Chicago*, 234 F.3d 979, 987 (7th Cir. 2000); *United States v. Reis*, 906 F.2d 284, 289 (7th Cir. 1990) (courts determine the existence of probable cause by applying an objective standard; it is the mindset of the "reasonable officer" and not of the actual arresting officer that matters). The test is whether a reasonable officer would have believed that the person had committed a crime. If the test is satisfied, "the arrest is lawful even if the belief would have been mistaken." *Kelly*, 149 F.3d at 646. Thus probable cause has been described as a zone within which reasonable mistakes will be excused. *Id.* "An officer's belief in the existence of probable cause '*need not be based on evidence sufficient to support a conviction, nor even a showing that the officer's belief is more*

*likely true than false*.'" *Driebel v. City of Milwaukee*, 298 F.3d 622, 643 (7th Cir. 2002) (citing

*Woods*, 234 F.3d at 996) (emphasis in original).

Where the underlying facts supporting probable cause are not in dispute, a court may

determine whether probable cause exists as a matter of law. See *Gonzalez v. City of Elgin*, 578

F.3d 526, 537 (7th Cir. 2009) (citing *Maxwell v. City of Indianapolis*, 998 F.2d 431, 434 (7th Cir.

1993)). Once probable cause relating to an offense is established, all § 1983 liability against the

arresting officer(s) is barred, "even if the person was arrested on additional or different charges

for which there was no probable cause." *Holmes v. Village of Hoffman Estate*, 511 F.3d 673,

682 (7th Cir. 2007) (citing *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004)); *Pourghoraishi v.*

*Flying J., Inc.*, 449 F.3d 751, 762 (7th Cir. 2006).

Whether an officer has probable cause to arrest depends on the requirements of the

applicable state criminal law. *Pourghoraishi*, 449 F.3d at 761 (citing *Williams v. Jaglowski*, 269

F.3d 778, 782 (7th Cir. 2001)). As long as an officer has probable cause to believe that an

individual "has committed even a very minor criminal offense in his presence," the officer may

arrest the offender without violating the Fourth Amendment. *Atwater v. City of Lago Vista*, 532

U.S. 318, 354 (2001).

In this case, Defendants focus on the offenses for which Plaintiff was actually arrested:

aggravated unlawful use of a weapon in violation of 720 ILCS 5/24-1.6(a)(2) and possession of a

firearm without a valid FOID card in violation of 430 ILCS 65/1(a)(1). The two offenses have

similar elements. Under 720 ILCS 5/24-1.6(a)(2), a person has committed the offense of

aggravated unlawful use of the weapon when he or she knowingly "[c]arries or possesses on or

about his or her person, upon any public street, alley, or other public lands within the corporate

limits of a city * * * any pistol, revolver, stun gun or taser or other firearm; and * * * the person

possessing the firearm has not been issued a currently valid Firearm Owner's Identification Card." Under 430 ILCS 65/2(a)(1), "[n]o person may acquire or possess any firearm, stun gun, or taser within this State without having in his or her possession a Firearm Owner's Identification Card previously issued in his or her name by the Department of State Police under the provisions of this Act." Under either statute, a showing of "actual physical possession" is not required. *People v. Curry*, 426 N.E.2d 1118, 1123 (Ill. App. Ct. 1st Dist. 1981). Rather, "proof of constructive possession of the gun by [a] defendant is sufficient." *Id.*; see also *People v. Elders*, 380 N.E.2d 10, 15 (Ill. App. Ct. 5th Dist. 1978). To establish that a person is in constructive possession of a firearm, the State must prove: "(1) that defendant had knowledge of the presence of the weapon; and (2) that defendant exercised immediate and exclusive control over the area when the weapon was found." *People v. Ross*, 947 N.E.2d 776, 781 (Ill. App. Ct. 1st Dist. 2011) (citing cases). Accordingly, Sergeant Poppish had probable cause to arrest Plaintiff if he reasonably believed that she was in possession—either actual or constructive—of Guy's handgun.[8]

Viewing the undisputed facts as "they would have appeared to a reasonable person in the position" of Sergeant Poppish, *Kelly*, 149 F.3d at 646, the Court concludes that Sergeant Poppish could have reasonably believed that Plaintiff had been in possession of Guy's handgun. As set forth above, there is a disputed question of fact regarding whether Guy tossed the gun through Plaintiff's car window and into her lap, or whether it was tossed under the driver's side of Plaintiff's car. But this factual dispute does not affect the disposition of Defendants' motion: accepting Plaintiff's version of the facts—that is, that the gun was tossed *under* the car— Sergeant Poppish had probable cause to arrest Plaintiff.

---

[8] There is no suggestion in the record that Plaintiff produced or had been issued a valid FOID card.

As an initial matter, if the Court accepted Sergeant Poppish's testimony that he saw Guy toss his handgun through Plaintiff's open car window, and later recovered the gun from under Plaintiff's car seat, any prudent officer could reasonably believe that Plaintiff took actual physical possession of, and concealed, Guy's handgun. But that is not the proper question at this stage of the case. As Plaintiff correctly notes, the "central inquiry at the motion for summary judgment stage is whether, under Plaintiff's version of facts, a reasonable officer could conclude that there was probable cause to arrest Plaintiff." Pl. Mem. at 4 (citing *Fox v. Hayes*, 600 F.3d 819, 833-34 (7th Cir. 2010)). At the same time, the fact that the parties' versions of the events giving rise to the lawsuit have a "he said, she said" quality to them (see Pl. Mem. at 5) does not preclude summary judgment if taking what "she said" as true nevertheless leads to the conclusion that the police officer had probable cause to make the arrest in question.

Here, accepting the facts as put forward by Plaintiff, Sergeant Poppish reasonably could have believed that Plaintiff had illegally possessed the gun. Plaintiff maintains that Sergeant Poppish saw Guy toss his gun underneath the driver's side of Plaintiff's parked car. Plaintiff also admits that she was sitting in the driver's seat with the driver's side car door cracked open and the window partially down. Plaintiff does not dispute that Sergeant Poppish focused his attention on Guy as the two struggled. Nor does she dispute that at some point during the struggle, Plaintiff exited her car and walked to the rear of the car, where Sergeant Poppish and Guy were located.

Viewing these facts objectively, a reasonable officer could suspect that Plaintiff had taken either actual or constructive possession of the gun during the struggle, while Sergeant Poppish's attention had been focused on Guy. If the version of the facts set forth by Plaintiff is accepted as true, Sergeant Poppish saw the gun tossed to a spot within reach of Plaintiff's

already-ajar driver's side door.[9]  By the time that Poppish turned his attention to Plaintiff, she had exited her car and walked toward the rear of her vehicle, in the vicinity of the area where the altercation between Poppish and Guy had occurred.  It is undisputed that the gun had not been located or secured as of that time.  Poppish's suspicions would have been further raised when shortly after Plaintiff denied that she knew anything about a gun, Guy ordered Plaintiff to "give [Poppish] what I gave you."  Sergeant Poppish also knew from Plaintiff's actions and behavior that Plaintiff was associated with Guy—she was not some uninvolved bystander who had been tossed a gun out of the blue.  Again, constructive possession requires that only that the defendant (1) have knowledge of the presence of the weapon; and (2) exercise immediate and exclusive control over the area where the weapon was found.  *Ross*, 947 N.E.2d at 781.   Viewing Plaintiff's version of the facts objectively, Sergeant Poppish reasonably could have believed that both of these prerequisites of possession had been met.

The Court's conclusion is bolstered by the fact that in order to have probable cause to arrest Plaintiff, Sergeant Poppish need not have had "evidence sufficient to support a conviction."  *Driebel*, 298 F.3d at 643.  Indeed, Defendants need not even make "a showing that the officer's belief [that a crime had been committed] is more likely true than false."  *Id.*  Rather, the law recognizes "the ambiguity of situations with which the police are often confronted" and consequentially recognizes that "the rule of probable cause permits mistakes reasonably made." *Hughes v. Meyer*, 880 F.2d 967, 970 (7th Cir. 1989) (citing *Brinegar v. U.S.*, 338 U.S. 160, 176 (1969)).   And neither Plaintiff's insistence that she was unaware that Guy had a gun on his

---

[9] Plaintiff cites to pages 91-95 of her deposition and pages 23-25 of Guy's deposition for the proposition that "Plaintiff was seated inside the car and, therefore, could not reach the gun, even if she had wanted to take possession of it."  Pl. Mem. at 6.  The cited portions of the deposition transcripts do not support that statement.  Instead, the facts in the record—again, viewed according to Plaintiff's version of the events— are that (1) the gun was tossed or slid under the driver's side of Plaintiff's car, and (2) Plaintiff was sitting in the driver's seat with the door ajar.

person that night nor Guy's protestations that Plaintiff had nothing to do with the gun alter the probable cause analysis. The focus must remain on the mindset of the reasonable officer apprised of the circumstances on the scene, not on an "omniscient observer" who would be in position to know whether to believe or disbelieve Plaintiff's statement that she knew nothing about a gun or whether Guy's instruction to give the officer "what I gave you" may have been made in reference to a book of CDs rather than to the gun that indisputably had been flung in the direction of the car (and Plaintiff). See *Fernandez v. Perez*, 937 F.2d 368, 370-71 (7th Cir. 1991) (police were "under no obligation" to release suspect who had been arrested along with three others when loaded gun was discovered in their car after gun's true owner confessed to ownership because police "did not have to believe the statements of the [confessing] individual").

With this standard in mind, the Court concludes that Sergeant Poppish had probable cause to arrest Plaintiff in the reasonable belief that she had violated 720 ILCS 5/24-1.6(a)(2) and 430 ILCS 65/2(a)(1). Accordingly, the Court grants summary judgment on Count I for Defendants and against Plaintiff. Because the presence of probable cause is an "absolute defense" to a claim for malicious prosecution under both federal and Illinois law, *Mustafa*, 442 F.3d at 547; *Porter v. City of Chicago*, 912 N.E.2d 1262, 1271 (Ill. App. Ct. 1st Dist. 2009),[10] summary judgment is appropriate for Defendants and against Plaintiff on Count II as well. And because the Court has concluded that Sergeant Poppish is not liable in the arrest and prosecution of Plaintiff, the City is not liable to Plaintiff either. See 745 ILCS 10/2-109 ("A local public entity is not liable for an injury resulting from an act or omission of its employee where the employee is not liable."). Accordingly, summary judgment also is warranted on Count III.

---

[10] See also *Johnson v. Target Stores, Inc.*, 791 N.E.2d 1206, 1219-20 (Ill. App. Ct. 1st Dist. 2003) ("the failure to prove a lack of probable cause is fatal to a claim for malicious prosecution").

**B.      Qualified Immunity**

Having found that Sergeant Poppish had probable cause to arrest Plaintiff, the Court "need not reach the issue [of qualified immunity] * * * because the existence of probable cause protects [Defendants] from liability, and the defendants therefore do not require the additional protection of qualified immunity." *Mucha v. Village of Oak Brook*, --- F.3d ---, 2011 WL 489617, at *4 (7th Cir. Feb. 14, 2011). Nevertheless, in the interest of completeness, the Court will undertake a brief qualified immunity analysis. Under that analysis, the Court concludes that even if probable cause did not exist for Plaintiff's arrest on January 13, 2009, Sergeant Poppish would be entitled to qualified immunity.

The Seventh Circuit has explained that "[w]hether police officers had probable cause to arrest a suspect and whether they are entitled to qualified immunity for the arrest are closely related questions, although qualified immunity provides the officers with an 'additional layer of protection against civil liability' if a reviewing court finds that they did not have probable cause." *Williams v. Jaglowski*, 269 F.3d 778, 781 (7th Cir. 2001). This means that even if there was no probable cause, liability will be avoided if "a reasonable officer could have mistakenly believed that probable cause existed." *Id*. (quoting *Humphrey v. Staszak*, 148 F.3d 719, 725 (7th Cir. 1998)). In other words, "[i]f the officers can establish that they had 'arguable probable cause' to arrest the plaintiff, then the officers are entitled to qualified immunity, even if a court later determines that they did not actually have probable cause." *Id*. This notion of "arguable probable cause" closely tracks the more general view that the doctrine of qualified immunity "allows 'ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law.'" *Gonzalez v. City of Elgin*, 578 F.3d 526, 540 (7th Cir. 2009) (quoting *Hunter v. Bryant*, 502 U.S. 224, 229 (1991)).

Supposing *arguendo* that Sergeant Poppish's probable cause analysis relating to Plaintiff's actual and/or constructive possession of the gun was mistaken, the Court would conclude that Sergeant Poppish would be entitled to qualified immunity for his actions. "Qualified immunity protects (among other things) [the] need to make split-second decisions by leaving 'ample room for mistaken judgments,' whether of fact or of law." *Brooks v. City of Aurora*, No. 09 C 4144, 2010 WL 3515814, at *7 (N.D. Ill. Aug. 30, 2010) (quoting *Payne v. Pauley*, 337 F.3d 767, 776 (7th Cir. 2003) and *Malley v. Briggs*, 475 U.S. 335, 343 (1986)). The Seventh Circuit has recognized that "[p]ublic officials, police officers among them, often are called upon to make difficult decisions in high pressure and high risk situations." *Jewett v. Anders*, 521 F.3d 818, 822 (7th Cir. 2008). The court of appeals has recognized that some of those decisions may be mistaken, but has determined that "[s]ubjecting police officers to liability for each reasonable but ultimately mistaken decision would result in 'unwarranted timidity,' would deter talented candidates from becoming police officers and would result in lawsuits that distract officers from their duties." *Id.* (citing *Malinowski v. DeLuca*, 177 F.3d 623, 626 (7th Cir. 1999)).

As the foregoing discussion demonstrates, qualified immunity allows for more discretion on the part of an arresting officer. Nevertheless, as with the probable cause analysis in the previous section, the Court must view the facts in the light most favorable to Plaintiff. See *Payne*, 337 F.3d at 769. Thus, "[i]f the arrestee challenges the officer's description of the facts and presents a factual account where a reasonable officer would *not* be justified in making an arrest, then a material dispute of fact exists" and qualified immunity cannot be decided at the summary judgment stage. *Arnott v. Mataya*, 995 F.2d 121, 124 (8th Cir. 1993). In this instance, however, the situation that confronted Sergeant Poppish undoubtedly was a dangerous one; the

parties agree that Guy did throw something under Plaintiff's car, which Sergeant Poppish correctly believed to be a gun. Sergeant Poppish was faced with the need to make a decision regarding whether Plaintiff was involved in the possession of that gun. Whether the gun was in or under the car, whether the window was down or partially lowered, and whether the door was closed or ajar are immaterial to the ultimate analysis, because it is undisputed that by the time that Poppish encountered Plaintiff, she had exited the vehicle and thus would have had access to the gun whether it was in the car (as Defendant believes) or under the car (as Guy testified). Moreover, in the totality of the circumstances—which include the time of day (night), the altercation with Guy, and the presence on the scene of an unsecured gun—Poppish cannot be faulted for not accepting on the spot Plaintiff's profession of ignorance about the gun or Guy's insistence that Plaintiff had nothing to do with it.

In sum, for all of the reasons discussed above, even if Sergeant Poppish's belief that Plaintiff had been in possession of Guy's gun was indeed a "mistaken judgment[]," that belief was a reasonable one that cloaked him with qualified immunity. *Gonzalez*, 578 F.3d at 540; see also *Humphrey*, 148 F.3d at 725 (stating that a district court should grant summary judgment to officers "if their actions were not objectively unreasonable at the time they were taken). Or, put slightly differently, the Court concludes that Poppish's decision to arrest Plaintiff "falls within the zone of probable cause" and "even more easily into the zone of qualified immunity." *Sheik-Abdi v. McClellan*, 37 F.3d 1240, 1247-48 (7th Cir. 1994).

### III. Conclusion

For the reasons stated above, the Court grants Defendants' motion for summary judgment [64]; judgment is entered for Defendants and against Plaintiff.

Dated: August 25, 2011

_____
Robert M. Dow, Jr.
United States District Judge